Yes, sir. Good morning, Your Honors. Tom Goldstein for the Appellants. If I could reserve one minute for rebuttal and just to start with the why we care question. This is a misdemeanor plea, but it's had enormous collateral consequences for the appellant. In addition, we have a finding by the district court that there was probable cause that the son committed a federal felony, which is deeply troubling. I'd like to... But of no consequence... To the son. That's right. The judicially recognizable consequences for the appellant. This is rooted in the fact that the government concedes here and ultimately conceded below that it deeply misled two magistrate judges, a district judge, and created a false evidentiary record for the litigants in the case. And... What was the state of the record on that question at the time of the plea? It's a critical point. This is to our second argument about whether he was... He should have just rolled the dice. What happened was the plea was entered immediately before the evidentiary hearing on both the Franks and the Fourth Amendment arguments. After the plea agreement, the government for the first time released evidence that was documents acknowledging what it had done. So as to the Fourth Amendment claim, they had created a false evidentiary record indicating that they had come into the suites at Caesar's completely, you know, without creating this false proof. But hadn't the defendants already figured out that was false because there were already these motions that were briefed? I mean, maybe the documents hadn't been released, but they knew already? Well, it's a... To say they knew is a strong statement, Your Honor. There was one tape in which they inadvertently mentioned... And so we believe to be true. I litigated this case in the district court. We thought that it was true. All of the evidence that the government turned over except for this one tape pointed in the opposite direction. So what happened was we... And this is in the record. We gave them a draft of the motion to suppress. This is not Franks, which is also going to be very important. We gave them a draft of the motion to suppress. After we gave them a draft of the motion to suppress, the government concedes in its brief here at pages 13 to 15. It, for the first time, created two documents partially acknowledging the ruse. It had created a false evidentiary record. They concede that now. They did not turn over those documents, which... I'm sorry. They created a false evidentiary record when? During the course of the case. By the way, we're not going to hold you to the 10 minutes. Thank you, Your Honor. Let's assume 15. Go ahead. I understand. Thank you, Your Honor. So here are some examples. Mike Wood went into the suites and created a false audio recording. There were memorandums... Was it like a false recording or... It was... Or he... The pretext for why he was there was... It was false. He create... He has a fake conversation. If you... The tape that they turn over to us, he is talking to someone ostensibly on the tape, but isn't actually talking to anyone. He's... There's nobody in the room. But is that the stuff about, like, I'm here to repair the cable or whatever? But he's talking only to the recording that gets turned over to us in discovery. There's no other person there. And then they create other documents. The government has conceded this created other documents that make it look like they were genuinely going to be there just in case there was a technical problem, that sort of thing. The government, after we give them a draft of the motion to suppress, creates two documents conceding... Acknowledging this ruse, but withhold them from us. Okay? They do not turn those over until the day before the evidentiary hearing, which is after almost everybody in the case pleads. They do not turn over any document acknowledging this in the evidentiary record until afterwards. But even beyond that, we have the Franks argument. The government, as to our second theory, we think they work in combination. Our second argument about why this is involuntary, they have this roll the dice argument. That is about the search and seizure question. It is not about the Franks question, which was incredibly important, and that is the lies to the magistrate judge, which were an independent basis for suppressing the evidence in the court in the evidentiary hearing. We have the extraordinary finding by a Federal Magistrate judge that the lead FBI agent, Min Pham's testimony is on this borders on the ridiculous. All afterwards, they got all the pleas in before the evidentiary hearing on anything about Franks, which really turns on their bad faith. Remember, of course, if there are innocent explanations for why this evidence is withheld from the original Warren application, we're going to lose Franks. So we can't just figure that out by having caught them red-handed because they happened to mention it on a videotape. We have to get them on the stand and prove that they acted in bad faith. And there is no evidence about that until after the guilty plea. So it is — I'm sorry. I'm not understanding. Yes. Sorry. If you knew at the time what was on the tape — Yes. — was what was used to — in the Franks hearing, and you had the evidence. What you didn't have was the magistrate judge's ruling that the evidence said what the evidence said. That is not correct. And I apologize for the confusion. What happens is the government maintains in its response to the Franks motion that this was all entirely in good faith. And the FBI agent affirmatively testifies at the evidentiary hearing that, no, no, no, no, no, it's not that we were hiding this from the Warren application. We thought everyone would understand that this ruse was on purpose. All of the testimony by the government at the Franks hearing is the opposite of what the government acknowledges now, which is that they did it on purpose, up to and including the evidentiary hearing on Franks. They wrote the warrant the way they did on purpose. Yes. But they weren't — not just on purpose. Obviously, they wrote it on purpose, but with the intent to mislead. That's the key for Franks. So I guess I'm still a little confused. So you knew that they had faked the whole thing about the broken Internet. You knew it was fake, but you didn't know it was intentionally fake? Is that the difference? No, no, no, no. We have to say fake as to who. It was fake as to the defendants, obviously. OK, we had figured that out. Then under Franks, the question is, when they then submitted the warrant application, were they intentionally or recklessly misleading the magistrate judge about what had happened? We did not have evidence about that. But given that everyone — I guess — so given that everyone knew this whole thing about the broken Internet was fake, and given that the warrants — that you had the warrant, right, the application, it says we were fixing the Internet, then don't you know that that's — I'm a little confused about what you didn't know. Well, Your Honor, all I can tell you is that they put on sworn witness, after sworn witness, saying, oh, no, we thought you would figure it out from the warrant application. We weren't trying to hide anything. What you think is absurd is what the magistrate judge did eventually conclude was absurd. But can we hook this up to the plea, why we should invalidate the plea? OK. Because it seems to me that they do run in two different directions. One is what you didn't know, and there — and so you were — I don't know, is it a coercion argument or involuntariness argument? Yes. But then the part about the Franks argument is more, as I understand it, of a integrity of the courts kind of argument. We do believe that the government's obligation to act in good faith is an overlay to the case, but doctrinally, in terms of why the plea is invalid, I don't think it's valid, is that we were misled. The government concedes that if — and we have a case about this — that if we are affirmatively misled by the government into understanding the strength of our case, for example, with fake evidence and by — with false testimony, then we are not expected to simply take the risk. We are — there are things the defendants have to do. They have to weigh the strength and weakness of their case. Do you have a case, though, where the misleadingness is about — so this is about how they got the evidence. It's not like the evidence of the gambling was false. It's like the way they got it was false. So are you — do you have a case that says — because you're going to — he pled guilty and said, yeah, I did this. So don't we need something that goes to the evidence rather than the search? Right. The cases that are discussed in the brief do not — there is not an exception to this doctrine that says, well, if you were inevitably guilty, the cases that we have cited do go to the point that if all of the evidence in the case would have been suppressed, that still makes the plea involuntary. But I do — I don't want to lose sight of our first argument. And what's your best case? Which case is your best case for that? If I could come back to — there is the — I'm just forgetting the name of it at this moment. There is a case that the parties debate back and forth in terms of whether or not the misleading actions by the government, like, were so pervasive. The government debates the length of the misconduct. And I apologize, but I'll come back to you. Can we go — I'd like to talk about the son without — Right. So I have a question about that. Sure. Does it matter for this purpose what the charge against the son was? In other words, it seemed to me that the probable cause as to whether he was, you know, in fact sports betting, you know, was marginal. But the probable cause on whether he was running the business doesn't seem to exist. Yes. Was he charged with both? No, he was not charged with sports betting. The thing that they — it's a really important point. I thought there were two charges. One was illegally using — No. The charges relate to running a sports betting operation. There is not a charge in the case that he made a sports bet. So just to step back, you are absolutely correct. I mean, we are talking whisker thin here. They have this kid sitting in front of a computer, okay? It's not the — there's a user login that is never attributed to him. We will accept for purposes of argument that at the time of the grand jury proceeding there was probable cause. The question is at the time of the plea, everybody agrees that. Everybody agrees that if there wasn't probable cause, this plea is involuntary. They would not let the son go. These charges are for more than five years. It's a Federal felony unless my client pleaded guilty. Okay. Who does everybody agree? I didn't think the government agreed that there was no probable cause at the time of the plea. The government does not agree that there is — No. I'm sorry. So who is the everybody? I'm sorry. The government — we agree on the legal rule. It's my only point. And that is — I see. The legal error in this case, if I could just put my finger on it, is the district court's misunderstanding about what exculpatory evidence is because everybody would agree that the evidence that the government had — I don't understand how probable cause goes away. Okay. In other words, if whatever they knew at the beginning was sufficient, the fact that they learned more that didn't add to it or support it and that — and that made his case stronger, how does that eliminate — Sure. Absolutely, Your Honor. We are not saying that they had to build more. My point is, affirmatively, they found out a ton of things that negated their only theory of the case. If I could just put it in terms for just — just to explain how this would work, they have the kid sitting in front of the computer. There's a — there's a perfectly legal explanation. That's a totally legal thing to do. Conceivably, it had something to do with the gambling operation. So what do they do? They get the computer itself. They find no evidence suggesting that there was any illegal gambling. They get his phone. There are no communications about it. They get all the records of the gambling operation. There are no communications with him. They get the list of everybody who's involved in the gambling operation. He is not on it. They get the list of all the customers. He is not on it. So if I — if you were to say, say, in the Brady context, okay, is that exculpatory? Could the government just refuse to turn that evidence? It's exculpatory, but does it eliminate probable cause? That's my question. Yes. The government's position and the district court's position is it's not exculpatory. I do not understand that point. Their position is the only thing that's — I don't even know what exculpatory evidence would be. Well, suppose it is exculpatory. I still don't know why it makes the probable cause go away. Oh, well, Your Honor, the probable cause is not for him being arrested. It is probable cause at the time of the plea to believe that he is guilty. And when you have all of this evidence that — we know everything about the gambling operation now. Well, are you changing the standard, though, to, like, something like what would have to be proved at trial? I mean, what's the difference between — isn't the question whether there was still probable cause to arrest him really? Isn't that — No, no, no, no, no. Why not? It's probable cause. They're prosecuting him. The legal rule is, is there probable cause to prosecute? He's been arrested. Right. But isn't — what's the difference between that standard and probable cause to arrest? Because they're different points in time. If you — Can I add, is it not that additional information has been obtained to exculpate him? Yes. In other words, whether you had probable cause at the time that this was presented to the grand jury is different than as you've investigated — I think what you're saying is as it's been investigated, there's then information to exculpate him because you can find nothing. Well, it's — it is not just that you can't find anything. So it is that they affirmatively found out everything about this. Okay. Fine. I mean, so maybe — I understand your point that because there wasn't more evidence, it maybe undermines the original evidence. But I'm confused about your point about what probable cause means at the two points in time.   As a legal matter, is there a different standard? Like, isn't it the same standard of could he have been arrested the day of the plea? Okay. So that's exactly right. Could they, in light of this evidence — so if you were just to ask yourself, okay, the day of the plea, you are, as a district judge or a judge or a magistrate, are presented with the following evidence. I found this kid sitting in front of a computer, okay, and it had a sports betting sign on it. Plus a bunch of people who I had reason to think were operating on you.  But remember, there are a bunch of other people that are not arrested that are there too. Okay. Just to be perfectly clear. Now, so the magistrate judge says this. Okay. Do you have all the records of the gambling operation? Yes, Your Honor. Is he mentioned anywhere in them at all? No. Do you have all of the communications from that very computer? Yes. Is there any indication that there was any sports betting on it? No. Do you have all the lists of the people working with the gambling operation? It seems to me what you're saying is that there — probable cause can be based on inferences, but the inferences can be rebutted by the — so there may have been illegitimate inferences. That's right. It is conceivable that this is a problem. Although, I would go back to your first question about the actual charge defense here. I mean, I do not understand — I mean, this has got to be the barest probable cause that he was involved in running a gambling operation. One last question, and then you are done with your — from that for now. The argument that the government makes, and I'm sure they're going to stand up and make it now, is that the grand jury determination of probable cause is preclusive. Has that ever been applied in this — you say there's sort of a passing in your brief, but I wondered whether — it obviously is preclusive as to the defendant himself as to whether the case can go forward. But what about in this context? It has not been applied in this context, although we think it's axiomatic because the government concedes in this context they have to prove it at the time of the plea. All right. Thank you very much. Thank you. Good morning. May it please the Court. Good morning, Counsel. Elizabeth White for the United States. I think that this question of what does probable cause mean, how does it change over time, I mean, I think that that is — that that is really critical. What the Supreme Court has said is that an indictment by a grand jury is conclusive evidence of probable cause. Well, it's conclusive as to whether the defendant, him or herself. Yes. But is it conclusive in this context? Well, I think the question would respect — What should it be? I mean, when the question — I mean, the problem in the — of course, in the context in which it's usually used, it's basically, well, you're going to get your trial, so, you know, what is — there's no — whether there is or isn't probable cause, you'll win. But here he's not going to get his trial, and the question is — well, I just want to know why it transfers. Is there any case that transfers? By the way, you will also get 15 minutes, so go ahead. Thank you. Well, what the D.C. Circuit said in Pollard, which is one of the cases I think that we both cite, is that once we have the indictment, then the government is entitled to prosecute the son fully or to offer leniency for him in exchange for his father's plea. So we — so we have a grand jury indictment that conclusively establishes probable cause. Does that case regard the grand jury indictment as preclusive on that question of whether there was probable cause? Yes. Yes. There are two sort of — there's two groups of cases. We also — we both cite a bunch of cases, and the defense relies on cases like Doe and Knuckles and Wright, where the government is threatening to prosecute someone if you don't plead guilty. You know, we will charge your father, we will charge your brother, right? The case is — the government here wasn't threatening to prosecute Wykin. We were prosecuting Wykin, right? I mean, he was a defendant. The son was a defendant in this case. He had been indicted. The pretrial motions were continuing. So this is much more along the lines of the cases like Lemory and Harmon and Pollard, where the government was prosecuting someone and offered leniency to that person in exchange for someone else's plea. And doesn't that case law hold that in order to prosecute, you have to — only if the government has probable cause to prosecute that third party, then? Yes. And this is what I would say to that, that at the time of the indictment, that the Supreme Court just said in 2014, right, that the grand jury indictment is conclusive as to probable cause. What was the — that's very nice, but what was the evidence, even at the beginning, that Wykin was operating a gambling business? The charge was also aiding and abetting. I think that when the — when the officers executed the search warrant, there was — what the district court found, there was significant evidence that there was an illegal sports betting thing going on. And at the time the search warrant was executed, Wykin and two of the other defendants were sitting monitoring with this — we said illegal — the court said illegal gambling website with messages, you know, with a message box monitoring the games and monitoring the betting. He had $1.6 million in the account. Now, the — So you actually, unlike — you actually have evidence or had evidence that he was monitoring something? Is that what you're saying? He was sitting in front of a computer that had — that had betting odds going on with a message box open monitoring the games and monitoring the odds. And you had evidence of that that you gave indicating that he was involved? Yes. That is the evidence that was presented to the grand jury. I mean, when the search warrant was executed, that's what we found. Now, the concession that I made at the — or concession, I guess, for the sake of argument, this idea of whether probable cause has to be determined at the time of the plea versus at the time of the indictment, what I acknowledged is that if the government in its subsequent investigation had discovered evidence that negated the evidence that was presented to the grand jury — for example, what if we find out two weeks later, yeah, no, that wasn't Wykin, that was his brother, or something like that, something that negates the evidence that we presented to the grand jury, then we would have, I believe, an ethical obligation. You know, just because we had this grand jury indictment, which is conclusive as to probable cause, if we discovered — I thought that — I'm sorry? I mean, we seem to have different versions of what, in fact, was found. Wykin had — where we were told, I thought, and maybe I misunderstood it, that after they looked at the computer, his computer hadn't been logged into the bedding sites, and this thing about the $1.6 million account balance wasn't his account or something like that? No. I believe that that's — I don't believe that that's correct. There was — I think the defense's argument is that as we continued this investigation, we continued to find additional evidence with respect to the other co-defendants. No. I interested him to say that they — I will get this clarified again, but that they investigated him and found that there was no — that his computer wasn't implicated and he wasn't implicated and so on. I don't have the details straight. My understanding is, is that his computer — I mean, they saw what they saw when they executed the warrant. Now, it may — I think that your opponent said that it was not an illegal site where he was, but you're saying it was an illegal site. Well, whether the Spobet website is an illegal gambling site or not an illegal gambling site was — is an issue that was raised in the 2255. It's not licensed in the United States, so I think it's Filipino or Malaysian. I mean, is it the government's position that it is an illegal site? Is that what you're saying? Or I'm confused by your answer. I believe that that was the finding that the court made and that that was our position. But regardless, I mean, there were — Doesn't that matter? I mean, if he has $1.6 million in illegal gambling, then that's not much probable cause. But if it's $1.6 million in illegal gambling, that's different, right? What there is, is there is significant evidence that an illegal sportsbook is being operated out of this villa in Caesars. And that the defendant is there. Participating. Now, in this — and this makes a really good point, right? If he went to — if he went to trial on this, yeah, he'd probably be entitled to a mere presence instruction. Okay? And so — and that — but that is the thing. We have an indictment. We can either prosecute him or — or offer leniency to him in exchange for his father's  But so can I get back to this negating issue? Right. I would like to acknowledge that it could — you could negate the original probable cause. So if you find out it's his twin brother who's identical, you — Exactly. He's off. Right. So I think Mr. Goldstein is arguing that that's sort of the same thing you had here, that you had the customer list, the records, and he's not on it, and so that necessarily negates. So what is your — do you have a response to that? And I think that that's just — I just simply disagree with that. I mean, I think we had what we had. We still have what we had. So, I mean, what is the scenario by which his activity is still illegal if it's not in the other records? Is there — was it, like, a different site? Or, I mean, what's the explanation? So, maybe, for example — and I — and we were not — we didn't test this at trial, so I don't know, but just sort of off the top of my head. Maybe — maybe he was just helping out his dad that one day, you know? Maybe his — maybe his involvement — So he's, like, using his dad's account? Is that what you mean by that? Yeah, maybe his involvement in this was, you know, I've got to leave today, take a look at this, see if anything happens. If anything happens, be ready. And nothing happened. I mean, you know, maybe his role was very small, but it was — you know, but we had — we had enough to get the indictment. None of — none of the information that we had when we got the indictment went away, although we didn't discover additional inculpatory evidence against him. I think this idea about what is exculpatory, there's two things. I mean, yes, the fact — you know, they can make an argument. If this had gone to trial, they would have made the argument that he's not on any of these lists, he's not on any of these accounts, you know, his — he clearly was just merely present, right? I mean, those are all exculpatory information. But they're not facts that exculpate — I mean, that negate what was presented to the grand jury. Okay, but — I'm sorry. Yes. So let me read this to you. In order for you to condition a plea agreement on leniency for the third party, it's only permissible if the government has probable cause to prosecute the third party. Yes. Is it your position that prosecute means indict, or does it mean at the time that you're going to trial or taking a plea that you have that — still have enough to go forward? Because what I hear you saying is, oh, well, we indicted him, and that's all we needed because we had probable cause at that time. But would you have had probable cause at the time of the plea? And isn't that what it's saying? I — I actually think that — that the grand jury's determination of probable cause, with the caveat that if we had discovered something to negate the evidence that we presented to the grand jury — But isn't a lack of evidence a negation of the probable cause at the time of the — at the time of the indictment? I don't believe that it is. Probable cause is, first of all, a very low standard. This is — you know, this is — Absolutely.  But you're not just here saying that you couldn't indict him. Right. The question is, could you have prosecuted him? Absolutely. I mean, this is what the D.C. Circuit said in Pollard. You know, once we have — once we have the grand jury indictment, we are entitled to prosecute the defendant. But — and this is what I said before, but it seems to me that probable cause at the outset depends on the fact that you — that there were permissible inferences from what you saw at the beginning. Yes. An inference including, for example — well, he's sitting there looking at a sports betting site with a bunch of people who are — we believe are running a sports betting operation, so there's a pretty good — there's an inference that he's involved. But then you find out he's not involved, and that he's not — that while a lot of other people have tracks as to being involved, he has none. Yes. So the question is whether at that point what was a permissible inference becomes a non-permissible inference. I would say that — that what that could mean is that the extent of his involvement in this operation was very limited. But you had no direct evidence of involvement. You had some evidence from which you might be able to infer involvement, but then when you looked at the more discreet evidence, which would have demonstrated the involvement, it wasn't there. And that's why — and that's why I say, you know, if we had gone forward, he'd be entitled to a mere presence instruction. We might not have gotten the conviction. Right. Can we go to the other questions? Yes. The Warren and Search questions. Yes. And just one point that I want to make before I move on, in all of these cases, in Lemery, in Harmon v. Mohn, in Pollard, you know, they all stand for the proposition that this coercive, you know, that you can — that the government can't coerce someone into threatening prosecution where they don't have probable cause. And in all three of those cases, they said, but that doesn't exist here because we had — because the government had already indicted the third party. And when the government, you know, the — Mrs. Harmon had already — was already under indictment, which is proof of probable cause. There is not a single case. The new rule that the defense is proposing here, I'm trying to — I'm trying to envision the consequences of it, right? Like, at every plea hearing where there's going to be some sort of benefit to a third party in terms of lenience, do we have to have a mini-trial before we accept the plea to make sure that the government would have been able to prosecute the person, would have been able to convict the person? I mean, this is — this is not an uncommon thing to have these group plea agreements, to have these — Are there no case laws supporting this two-stage version? I do not know a single case where the government has an — has indicted someone, has offered to reduce or dismiss charges, and there's been a question of, oh, well, we have to see whether they had probable cause at the time of that. There simply is not a case. And I think that Lemery, Harmon v. Mohn, and Pollard are the three strongest cases that just explain that straight out. Okay. How about the other — As to the search. Wait, wait, wait. What the district court — I told you to officially have a minute and a half. Okay. You can go on a little longer. Go ahead. What the district court noted, this is at the excerpt of Record Page 13 and a footnote to his order denying the 2255. He noted that five weeks before Mr. Young pleaded guilty, he filed a motion to suppress. And in that motion to suppress, he said, government agents disconnected the Internet, Wood went into the villa presenting himself as a technician. Wood made a severely misleading cell phone video inside the villa and conducted a fake conversation on the recording so that anyone who later watched the tape would think the intrusion was legitimate. In our response to the — as the Court noted, in the government's response to the motion to suppress, we conceded the ruse. I think that there's a lot — that there were clear errors in the investigation of this case. There were errors in the — clear errors in the affidavit in support of the search warrant. I would just really encourage the Court to read the Court's, the magistrate judge's orders on recommendation with respect to the motions to suppress. Those are 406 and 407. And the district court judge's order granting the motion to suppress 474. Because I think that although there were — there were serious errors here, there's a — they weren't — they weren't as — as outrageous as they're made to — made to seem. They were — they were errors. And what — I mean, I think one of the things — this idea about the ruse, okay? So, yes, we just — the agents disconnected the DSL and went in. And the motion to suppress talked about this being, you know, the greatest threat on democracy, you know, government agents, blah, blah, blah, blah. And the magistrate judge agreed with us that this was not unconstitutional. I mean, this is — you know, we said there's a couple of lines of cases about how law enforcement can get into people's homes. And there's this side, which is very clear, and this side, which is very clear. And now we have this new situation. We think it's closer to this side than this side. The magistrate judge agreed with us. The district court didn't. And we respect that. We did not appeal this decision. I mean, this was a — this was kind of a new, uncharted investigative tool, which will not be used again, and that's probably fine, you know. But — but this wasn't — you know, the judge — the judge found that — that we — that we — that the ruse was constitutional. And then in the Franks' hearing motion —  What about the Franks' motion? Yeah. And then in the Franks' hearing motion, she said that — that it was a Franks' violation not to tell the magistrate about the ruse when we got the search warrant. And in our objections, we said, well, wait a second. It's like, if — The magistrate judge didn't think it mattered, right? Right. So if this isn't unconstitutional, then how can it be a material Franks' violation not to advise? Well, but still — But still. A lie. Yes. You know, but still. We — we withheld that information. But for one thing, the magistrate might think otherwise. Yeah. And that's exactly what Judge Leen said. I mean, Judge Leen said, you know, even though I think this is — that this is — that this ruse is not unconstitutional, you know, Judge Cope is the one who was presented with the — with the search warrant affidavit, and she should have, you know, as a matter of first impression, she should have been given this information. The FBI agents testified about a couple of reasons that they — that they withheld that information. And, you know, there were a couple of — they said it was about protecting the contractor, and they said it was about protecting sort of methods of investigation. And then at the hearing, the FBI agents said, you know, we think it should have been clear, which Judge Leen found bordered on the ridiculous. But this was — you know, there were mistakes that were made here. And at the end of the day, the motion to suppress was granted. And all of that — I mean, the majority of that information, maybe not some of the details, maybe not some of the documents which hadn't been turned over until before the evidentiary hearing, but the — but the meat of the issue, right? I mean, this was — this had been fully briefed. This was a few days, a week before the suppression hearing. These six defendants agreed to take this deal to a misdemeanor, you know, times — or five-year probation sentence. If we agreed with them that the guilty plea had to be vacated for this, is there any way he could be re-prosecuted or not because of everything that's been suppressed at this point? No, no. This is — yeah, no. This — he wouldn't be able to be re-prosecuted. And I think that's one of the — you know, the defendants make choices. Like, we were on the eve of this suppression hearing with this fully briefed suppression motion, and several of these defendants decided to take a misdemeanor plea rather than go forward, right? Now, the fact that one of them did go forward — two initially, and then actually took a misdemeanor plea after the report and recommendation came out, I believe. But the fact that one of them went forward and was successful, and the case against him was dismissed, you know, now if all of the ones who decided not to go forward and to take the misdemeanor deal, they get the benefit of that, then I think going forward, you'll see in every single conspiracy case, one guy agreeing to go forward, the rest of them taking the sweet deal that they can get, and then trying to — and trying to back out of that deal afterwards. Okay. Thank you very much. You're way over time. You've been helpful. Mr. Goldstein, we'll give you, let's say, two minutes. And I think I can efficiently go through a very specific set of issues and get you some information that you need. The case that I promised to identify for you is the Fisher case. It's discussed in the briefs. That's where there was a Fourth Amendment violation that was a result of misleading the court. And that was — From the Fourth Circuit? Yes, exactly. Is there any case that supports the two-stage probable cause? Yes. And so a couple things about that. The second point I was going to make is the Pollard case from the D.C. Circuit that the government is talking about is one where you had an existing prosecution. That's a slightly different issue. I just want to segregate them out. The government takes the position that, hey, if we're already prosecuting someone, Katie, bar the door. We don't — it doesn't matter. There's no argument that we can have undue influence. All of the courts have held that you have to have good faith with respect to a group plea, whether you're threatening to indict someone new or prosecuting somebody who's already being prosecuted. That obviously has to be the case. You can't use the threat, you know, putting his son in jail for five years when you have no probable cause against him. Yes, the district court was quite clear that the rationale of all of these cases — the government conceded this point below is the weird thing. The government affirmatively conceded that it had to have probable cause at the time of the prosecution. It conceded it again in its brief in this Court. I don't think they're disputing it. I think they're just saying there isn't a case that exactly spells it out. Oh, yes, Your Honor. I respectfully disagree. The government took the nuanced position today that at the time of the plea agreement, they couldn't go forward if there was a negation of the precise evidence that was put in front of the grand jury. This makes no sense to me whatsoever. Their position in front of you today is astonishing and alarming, with all due respect. That is, they can affirmatively know that the person is innocent. But so long as the basis for finding of innocence doesn't negate the precise evidence that was put in front of the grand jury, then it's fine. That cannot be the law. You cannot possibly write an opinion saying that. The government has taken the position in front of you today that it is not a question of whether they could prosecute at that time. It is only a question of whether there has been a negation of the evidence that existed at the time of the arrest. Well, I think she was saying, maybe I thought she was saying we still needed to have probable cause then. Now, you guys have a disagreement about whether they did. Well, I don't understand that. But if you understand that, then I win. You know, I'm fine. I mean, in terms of the legal standard. I think you have a dispute about whether there was probable cause. But I thought everyone was still agreeing that the question was whether there was probable cause. Then fine. Then that's fine. All right. Now, the third point that I wanted to make, Your Honor. One more sentence. Go ahead. Okay. Oh, I'm sorry. Page 13 lists the actual evidence that they had, which was that he was simply sitting in front of a computer. You asked, well, I don't quite understand what it is that they found out. So in objective terms, this is what happened. Was he sitting in front of his own computer? He was sitting in front of a computer they believed was his. But we presented evidence that it wasn't actually his computer. He was sitting in front of a computer. It has this website. It is perfectly lawful, everyone agrees, to look at this website. Okay. It is an overseas licensed betting site. It has sports betting odds. There is a perfectly legal explanation for it. That's why the government concedes it could have been either way. What do they find afterwards? They search the computer forensically. They search all of his communications forensically. They get all of the evidence from the betting operation. The government, in terms, has conceded in front of you that evidence is exculpatory. That is the opposite of the other. Well, it's not inculpatory. No. If you look at the transcript, the government concedes it is exculpatory because you know everyone involved. You have a list of all the employees. You have a list of all of the computers. That's exculpatory. To say it is not exculpatory is to say it doesn't have to be turned over under Brady. One last question, and then I'm going to ask you, Mr. Chapman. The probable cause included that he had an account with a $1.6 million balance. No. Just to be clear. Well, that's what they said it included. Okay. Well, it's just here's the actual fact. It is not contested. We say it in our brief. There is a computer screen open. It has an account that begins HK, and it has a series of numbers after it. There is $1.6 million in the account. They then have every opportunity. There is no evidence whatsoever that's his account. They go through all the records on the computer. They go all through all the records of the gambling operation. I thought there was something about a login name that was like his name, essentially. Yes. Okay. This is what's confusing. Okay. There is a sentence in the district court's opinion that is mistaken and the government does not defend it. The only — I will just read you, and I am not trying to take up my time unduly. This is what the —  Go ahead. I'm not trying to steal time. Go ahead. I'm just trying to answer directly the question. Okay. The bottom of page 13 of the government's brief is their representation of what they have, and it is accurate. One sentence. Agents executing the Villa 8882 warrant found Poie, Wykit, and Wykin watching a soccer game, all sitting in front of laptops with a website displaying live betting odds for the game and instant messaging windows. What you are referring to, Your Honor, and I will just — I know exactly what's happening. The district court says that there is a login Wykin. That is the login for the computer. It is not the login for the betting site. The login for the betting site is HK and a number. They then go through all the records of the computer, all the records of the betting operation, and there is no link whatsoever between that HK whatever and Wykin. We turned over to them evidence that the reason that this computer said was Wykin is he physically purchased it for his father. There is 0.00 evidence on day one or the day of the plea that that sports betting account belonged to Wykin. None. Okay. Thank you very much. Thank you both for a very interesting and illuminating argument. The case of United States v. Young is submitted, and we are going to take a break. Thank you.
judges: Berzon, Friedland, Cardone